1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMMY BJORKLUND,

                              Plaintiff,

    v.

CAROLYN W. COLVIN, Commissioner of
Social Security,

                         Defendant.

Case No. 3:13-cv-05153-RBL-KLS

REPORT AND RECOMMENDATION

Noted for March 21, 2014

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits.  This matter has been referred to the undersigned

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as

authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing

the parties' briefs and the remaining record, the undersigned submits the following Report and

Recommendation for the Court's review, recommending that for the reasons set forth below,

defendant's decision to deny benefits be reversed and this matter be remanded for further

administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On October 15, 2009, plaintiff filed an application for disability insurance benefits,

alleging disability as of September 1, 2005, due to pain in her back and in her right shoulder,

neck and leg, attention deficit hyperactivity disorder, and a bipolar disorder.  See ECF #9,

Administrative Record ("AR") 23, 176.  That application was denied upon initial administrative

REPORT AND RECOMMENDATION - 1

review on March 16, 2010, and on reconsideration on May 5, 2010. See AR 23.  A hearing was held before an administrative law judge ("ALJ") on August 23, 2011, at which plaintiff, represented by counsel, appeared and testified. See AR 51-83.  At the hearing, plaintiff amended her alleged onset date of disability to December 25, 2008. See AR 23, 26.

In a decision dated September 13, 2011, the ALJ determined plaintiff to be not disabled. See AR 23-45.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 8, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981.  On March 7, 2013, plaintiff filed a complaint in this Court seeking judicial review of that decision. See ECF #3. The administrative record was filed with the Court on May 14, 2013. See ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred in:

(1)  evaluating the medical evidence in the record concerning her mental impairments, including the opinion of Linda Jansen, Ph.D.;

(2)  discounting plaintiff's credibility;

(3)  rejecting the lay witness evidence in the record;

(4)  assessing plaintiff's residual functional capacity;

(5)  finding plaintiff to be capable of returning to her past relevant work; and

(6)  finding her to be capable of performing other jobs existing in significant numbers in the national economy.

Plaintiff also argues this matter should be reversed and remanded based on additional evidence she submitted for the first time to the Appeals Council consisting of a psychological evaluation

REPORT AND RECOMMENDATION - 2

report from Cheryl O. Hart, Psy.D.  For the reasons set forth below, while the undersigned agrees the ALJ erred in evaluating the opinion of Dr. Jansen – and thus in assessing plaintiff's residual functional capacity, in finding her to be capable of both her past relevant work and other jobs existing in significant numbers in the national economy and in determining her to be not disabled – and therefore defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld.

REPORT AND RECOMMENDATION - 3

1   Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

2   sufficient to support either outcome, we must affirm the decision actually made.") (quoting

3   Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

4   I.      The ALJ's Evaluation of Dr. Jansen's Opinion

5           The ALJ is responsible for determining credibility and resolving ambiguities and

6   conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

7   Where the medical evidence in the record is not conclusive, "questions of credibility and

8   resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

9   642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

10  Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

11  whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

12  all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

13  within this responsibility." Id. at 603.

14          In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

15  "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

16  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

17  stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

18  "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

---

[1] As the Ninth Circuit has further explained:

>   . . . It is immaterial that the evidence in a case would permit a different conclusion than that
>   which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
>   substantial evidence, the courts are required to accept them.  It is the function of the
>   [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
>   not try the case de novo, neither may it abdicate its traditional function of review.  It must
>   scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
>   rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981);

<u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole." <u>Thomas v. Barnhart</u>,

278 F.3d 947, 957 (9th Cir. 2002); <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d

1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001);

<u>Matney on Behalf of Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining

physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."

<u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial

evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31;

<u>Tonapetyan</u>, 242 F.3d at 1149.

Plaintiff underwent a psychological evaluation performed by Dr. Jansen in mid-January

REPORT AND RECOMMENDATION - 5

2010, who concluded in relevant part:

> . . . [Plaintiff] presents with chronic pain and symptoms of anxiety, depression, and attention deficits. . . .
>
> [Plaintiff] appears capable of appropriate social interactions and would likely be able to accept instructions from supervisors and interact with the public and/or co-workers.  However, she does report struggling with irritability and anger, and this might interfere with performance of work tasks or increased risk of decompensation in a high pressure work setting.  Due to her learning difficulties, as well as attention deficits, she may have difficulty performing complex or detailed work tasks, and might have difficulty retaining, comprehending, or following through on instructions.  She reports that she is easily stressed, and "even lists can be overwhelming."  Results of the Trail Making test indicate significant difficulty with attention, concentration and cognitive flexibility, which would interfere with ability to persist through a normal work day or to respond appropriately to changes in the workplace.  This examiner defers to the medical provider as to the physical limitations, but it seems [plaintiff] would have difficulty maintaining regular attendance due to her back condition and pain.  She would likely be able to perform simple work duties in a low demand, part-time or flexible work setting.

AR 410.  She also gave plaintiff a global assessment of functioning ("GAF") score of 50.[2]  See id.

The ALJ addressed Dr. Jansen's functional assessment- as follows:

> The opinions of the consultative examiner, Dr. Jensen [sic], are given some weight (Ex. 10F).  Dr. Jensen [sic] stated that the claimant's impairments cause serious symptoms and interfere with her ability to sustain work, but she did not conclude that the claimant is incapable of working.  The GAF score of 50 assigned by Dr. Jensen [sic] indicates more serious limitations that are supported by the medical evidence, and it is noted that the claimant was under unusual stress at the time of the examination due to the foreclosure of her house.

AR 39 (internal footnote omitted); see also AR 35.[3]

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally.  England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34).

[3] The ALJ made somewhat more detailed, but similar findings in regard to Dr. Jansen's opinion in the discussion of his assessment of plaintiff's credibility:

REPORT AND RECOMMENDATION - 6

Plaintiff argues it was improper for the ALJ to reject the "serious symptoms" (id.) that interfere with her ability to sustain work on the basis that Dr. Jansen did not actually opine that she was incapable of working.  The Court agrees.  There mere fact that Dr. Jansen did not give such an opinion is not a valid reason for rejecting the specific significant functional limitations she did assess.  The ALJ did not address those at all – other than to merely note she had assessed them – or explain why he rejected them, which he clearly did as his own assessment that plaintiff was restricted only to simple and some complex tasks (see AR 30) is at largely at odds therewith. It also is not at all clear that the record supports the ALJ in attributing the GAF score of 50 Dr. Jansen assigned to the "unusual stress" plaintiff was under at the time "due to the foreclosure of her house" (AR 39), as Dr. Jansen gave no indication that the limitations she assessed were a result thereof. See AR 406-10.  In addition, while the record does indicate that situational stressors have had an impact on plaintiff's mood (see AR 386-87, 392, 536), no medical source has opined that her functional limitations are due solely or primarily thereto (see AR 395, 441, 470, 541-42), and thus to the extent that the ALJ is offering his own psychiatric or psychological interpretation here, he erred.[4]

---

. . . Dr. Jansen stated that the claimant would have problems learning *complex or detailed* tasks and her symptoms would interfere with her ability to persist through a normal workday or workweek.  Additionally, Dr. Jansen assigned the claimant a GAF score of 50, indicating serious symptoms.  However, Dr. Jensen [sic] also stated that the claimant can interact properly with supervisors, co-workers, and the public.  In addition, Dr. Jensen [sic] did not conclude that the claimant is incapable of working (Ex. 10F, p. 5).  When Dr. Jansen's opinion is considered in the context of the remaining evidence of record, the conclusion that the claimant is not disabled is supported.

AR 35 (emphasis in original).

[4] See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for that of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony).

REPORT AND RECOMMENDATION - 7

1    It is true that the findings of the two state agency non-examining, medical consultants,

2    Steven Haney, M.D., and Renee Eisenhauer, Ph.d., provide a much less restrictive functional

3    assessment – one in line with the ALJ's own findings (see AR 30, 441) – but the ALJ supported

4    his decision to give that assessment greater weight in significant part because he found it to be

5    supported by that of Dr. Jansen, which clearly is not the case.  It is true as well that GAF scores

6    indicating greater functional ability were assessed by two of plaintiff's treating physicians,

7    Amado Daylo, M.D., and Minjing Wu, M.D. See AR 39, 395, 470.  However, while it may be

8    that both physicians based those scores on their own observations in the context of a treatment

9    relationship, so too did Dr. Jansen base her GAF score on what she found during her evaluation

10   of plaintiff, and she gave a far more detailed explanation for her functional assessment and GAF

11   score than did Dr. Daylo or Dr. Wu. See AR 395, 410, 470.  Although certainly Dr. Daylo's and

12   Dr. Wu's scores may be consistent with some of the other medical evidence in the record, again

13   Dr. Jansen provided detailed objective clinical findings as well, which the ALJ did not find to be

14   inconsistent with that other evidence or reject on that basis.

15         On the other hand, the undersigned disagrees that the errors the ALJ committing in regard

16   to Dr. Jansen's opinion should result in an award of benefits at this time.  It may be that those

17   functional limitations Dr. Jansen assessed – such as the increased risk of decompensation in a

18   high pressure work setting, difficulty retaining, comprehending, or following through on

19   instructions, impacted ability to persist through a normal work day or to respond appropriately to

20   changes in the workplace, and restriction to a low demand, part-time or flexible work setting –

21   ultimately should result in a determination of total disability, as plaintiff argues.[5]   At this time,

---

[5] Specifically, plaintiff argues Dr. Jansen's opinion supports a finding of disability, because "[a] person who is limited to 'low demand' work in part-time or flexible work could not perform work on a regular and continuous basis," and "[w]ork that is performed under special conditions or with special supervision may not constitute [substantial gainful activity]." ECF #13, pp. 5-6 (citing 20 C.F.R. § 404.1573; Social Security Ruling ("SSR") 96-

REPORT AND RECOMMENDATION - 8

1   however, because the ALJ did not specifically address those limitations, and because the record

2   as discussed above contains other evidence, including other medical opinion evidence, that

3   plaintiff is not as restricted in her ability to function mentally as alleged, it is not possible for the

4   Court to make that determination at this time.

5   II.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

6       Defendant employs a five-step "sequential evaluation process" to determine whether a

7   claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled

8   at any particular step thereof, the disability determination is made at that step, and the sequential

9   evaluation process ends. See id.  If a disability determination "cannot be made on the basis of

10  medical factors alone at step three of that process," the ALJ must identify the claimant's

11  "functional limitations and restrictions" and assess his or her "remaining capacities for work-

12  related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity

13  ("RFC") assessment is used at step four to determine whether he or she can do his or her past

14  relevant work, and at step five to determine whether he or she can do other work. See id.

15      Residual functional capacity thus is what the claimant "can still do despite his or her

16  limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all

17  of the relevant evidence in the record. See id.  However, an inability to work must result from the

18  claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

19  limitations and restrictions "attributable to medically determinable impairments." Id.  In

8p, 1996 WL 374184).  But it is far from clear that Dr. Jansen believed plaintiff would be unable to perform full-time work on a regular and continuous basis, since as noted above she expressly opined that plaintiff likely could work "in a low demand, part-time *or* flexible work setting." AR 410 (emphasis added).  Further, the Commissioner's regulations merely provide that work performed under special conditions or special supervision – which conceivably could include the limitations assessed here by Dr. Jansen – *may* constitute less than substantial gainful activity. See 20 C.F.R. § 404.1573(c).  Given the record as it is, though, and the fact that Dr. Jansen did not more clearly state what she meant by low demand or flexible work – as well as the fact that the ALJ did not specifically discuss that limitation – a finding of disability based on Dr. Jansen's opinion is not warranted at this time.

REPORT AND RECOMMENDATION - 9

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found in relevant part:

**The claimant had the residual functional capacity to perform light work . . . with some additional limitations. The claimant can frequently balance and never climb ladders, ropes or scaffolds. She can occasionally perform all other postural functions. The claimant must avoid concentrated exposure to vibrations. She can perform simple and some complex tasks.**

AR 30 (emphasis in original) (internal citation omitted). Plaintiff argues this assessment of her residual functional capacity is "impermissibly vague," because the ALJ "did not specify what he meant by 'some complex tasks,'" which "did not allow him to adequately evaluate [her] ability to perform her past work at step four." ECF #13, p. 4. But plaintiff fails to explain what makes the phrase "some complex tasks" impermissibly vague, nor does she point to any legal authority to show greater specificity on the ALJ's part was required. The undersigned thus declines to find the ALJ erred as asserted here. On the other hand, given the ALJ's improper rejection of Dr. Jansen's opinion discussed above, it cannot be said at this time that the above RFC assessment completely and accurately describes all of plaintiff's mental functional limitations and therefore that it is supported by substantial evidence.

III.    The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as a deli clerk, recreation aide and ferry terminal operator, jobs the ALJ determined did not require performing work-related activities precluded by plaintiff's residual functional capacity. See AR 41. The parties agree the ALJ erred in finding plaintiff was capable of performing the first two jobs. As for the job of ferry terminal operator,

REPORT AND RECOMMENDATION - 10

1   plaintiff argues that while the ALJ limited her to light work, which requires a maximum ability

2   to lift 20 pounds,[6] she reported that she lifted 25 pounds when doing that job.[7] See AR 210.

3       The undersigned finds it was not unreasonable, however, for the ALJ to conclude that this

4   report on plaintiff's part was inaccurate, given that it was a box she checked on a form indicating

5   how much she lifted frequently, and elsewhere on the form she checked another box indicating

6   the maximum amount of weight she lifted was only 20 pounds, and described her requirements

7   in terms of lifting and carrying as follows: "10 1bs. Ice chest Hassmat [sic], 20 lbs. Salting

8   docks, looyards [sic], TRASh 20 lbs." Id.  In other words, given the number of times plaintiff

9   indicated she lifted/carried up to 20 pounds, and that the form did not contain a box that could be

10  checked indicating an ability to frequently lift that amount, it is most likely plaintiff checked the

11  box that came most close to representing that amount, and thus did not accurately represent what

12  plaintiff actually had to lift on the job.[8]

13      Also without merit is plaintiff's contention that the ALJ "did not obtain sufficient

14  documentation [of the mental demands of her past relevant work] to support his" step four

15  determination, as she again fails to explain what additional documentation was required in this

16  case. ECF #13, pp. 20-21 (citing SSR 82-62, 1982 WL 31386).  Plaintiff fails to explain as well

17  how the substantial medical or other evidence in the record supports a limitation to less than the

---

[6] See 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

[7] Plaintiff has the burden at step four of the disability evaluation process to show she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

[8] Plaintiff further argues she cannot perform her past work as a ferry terminal operator, because the job description closest to that job contained in the Dictionary of Occupational Titles ("DOT") requires the ability to exert force at a much greater level than 20 pounds. See ECF #13, p. 19 (citing DOT 911.677-010).  But the Ninth Circuit has "never required explicit findings at step four regarding a claimant's past relevant work both as generally performed [(i.e., as described in the DOT)] *and* as actually performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (emphasis added).  Indeed, as also expressly recognized by the Ninth Ciruit in Pinto, the Commissioner's regulations advise the ALJ "to first consider past work as actually performed, and then as usually performed." Id. at 845.  The undersigned therefore declines to find error in any failure of the ALJ to determine whether plaintiff could perform the job of ferry terminal operator as generally performed in addition to as she actually did so.

REPORT AND RECOMMENDATION - 11

1    full range of sedentary work, nor does the undersigned find it does.  On the other hand, though,

2    once more as discussed above because the ALJ erred in his evaluation of Dr. Jansen's opinion,

3    and therefore in assessing plaintiff's residual functional capacity, the ALJ's step four findings

4    also cannot be said at this time to be supported by substantial evidence.

5    IV.    The ALJ's Findings at Step Five

6
7           If a claimant cannot perform his or her past relevant work, at step five of the disability

8    evaluation process the ALJ must show there are a significant number of jobs in the national

9    economy the claimant is able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e).

10   The ALJ can do this through the testimony of a vocational expert or by reference to the

11   Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101;

12   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  The Grids may be used if they

13   "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101

14   (emphasis in the original).  That is, the claimant "must be able to perform the *full range* of jobs

15   in a given category." Id. (emphasis in original).

16
17          If the claimant "has significant non-exertional impairments," however, reliance on the

18   Grids is not appropriate.[9] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-

19   exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways

20   not contemplated by Grids).  Plaintiff argues it was improper for the ALJ to rely on the Grids in

21   finding her to be capable of performing other jobs existing in significant numbers in the national

22   economy. See AR 41-44.  The undersigned again agrees that in light of the ALJ's errors in

23
24   evaluating the opinion of Dr. Jansen, and therefore in assessing plaintiff's RFC, it is far from

25
26   _____
     [9]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20
     C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's"ability to meet the demands of jobs
     other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 12

clear that the Grids completely and accurately describe all of her mental functional limitations,

given that it is difficult to view those Dr. Jansen assessed as being merely mild or moderate ones.

See Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (finding ALJ's conclusion that

claimant's mild to moderate depression and limitations stemming therefrom were not sufficiently

severe so as to prohibit ALJ's reliance on Grids).

V.      This Matter Should Be Remanded for Further Administrative Proceedings

        The Court may remand this case "either for additional evidence and findings or to award

benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

        Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because as discussed above issues still remain in regard to the opinion of Dr. Jansen, and thus in

regard to plaintiff's residual functional capacity and ability to perform both her past relevant

work and other jobs existing in significant numbers in the national economy, remand for further

REPORT AND RECOMMENDATION - 13

consideration of those issues is appropriate.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 21, 2014**, as noted in the caption.

DATED this 7th day of March, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14